[No. 377. Decided April 7, 1892.]

SOPHIE J. SCÔLAND, *Respondent,* v. JACOB SCOLAND, *Appellant.*

DIVORCE—CRUELTY—SUPPLEMENTAL COMPLAINT—REFUSAL TO DISMISS ACTION—WAIVER OF ERROR.

In an action for divorce on the ground of cruelty, acts of cruelty subsequent to the commencement of the action, should be alleged by supplemental complaint.

Although the court may have erred in denying defendant's motion to dismiss an action for divorce at close of plaintiff's testimony, the error was cured by defendant's thereafter proceeding with the case.

In an action for divorce by a wife on the ground of her husband's cruelty in maliciously and publicly charging her with adultery, a decree in her favor will not be reversed, although her indiscreet conduct in receiving the visits of a man to whom her husband made objection was the direct cause of his accusation. (HOYT, J., dissents.)

*Appeal from Superior Court, King County.*

The facts are stated in the opinion.

*Edgar Lemman,* for appellant.

*J. C. Haines* (*L. B. Stedman,* of counsel), for respondent.

The opinion of the court was delivered by

STILES, J.—In this case the action for divorce is based upon alleged acts of cruelty, and it was entirely proper

that other acts of cruelty occurring subsequently to the commencement of the action should be alleged by supplemental complaint. Whether they should be allowed to be shown at so late a stage of the proceedings was for the superior court in its discretion to say. No harm seems to have come of it.

A motion for a non-suit was made at the close of plaintiff's testimony, which was denied. Technically a motion for a non-suit is not applicable to an equitable action (Code Proc., § 409), but treating this as a motion to dismiss, we find the alleged error, if any, cured by defendant's proceeding with the case. To reap advantage from such a motion in equity the party must have stood upon it. *Cuttell v. Fergusson*, 3 Wash. 541 (28 Pac. Rep. 751).

In case before us the wife charges the husband with maliciously accusing her of adultery and other unchaste conduct. He admits making the accusations, but denies the malice, and pleads affirmatively that in the face of his protest she received the visits and attentions of other men, particularly in his absence from home. Each side proved what might be termed a fairly good case, if either had been the complainant, except that the husband failed entirely to show reprehensible conduct on the part of his wife toward any but the one man particularly named in his answer. She gave him just and abundant cause for his jealousy, and he was brutal and indecent in his exposure of her faults. There was no convincing proof that she had been criminally intimate with any man. She was certainly indiscreet in receiving the visits of a man other than her husband, as the testimony shows she did; but the man was introduced into his house by the husband, and these visits had been encouraged by the husband for three or four years before he made any objection to them. When he made positive objection they ceased, and had not been renewed up to the time this action was commenced, six or eight months after-

ward.    But notwithstanding the apparent cessation of this cause of his trouble, the husband goes on with his talk, and even on the witness stand swears that he would never live with his wife again unless she publicly acknowledged her adultery with at least two men.    The impression we get from his actions and testimony is, that he is perhaps unbalanced in his mind on the two subjects of religion and the unfaithfulness of his wife.    His evidence probably aided materially in securing the decree against him, as it shows him determined to maintain her guilt to be a fact with or without proof, and without regard to consequences.

The court below made the usual findings in cases of this kind, and while we might, if trying the cause originally, view some of the facts differently from the way they seem to have been regarded here, the presence of the parties is of so great importance in these cases that we ought not, where there is such a degree of doubt, reverse a decree.    It is probable that nothing will ever happen to bring this husband and wife into anything like amicable relations, and to reverse the decree might be merely to set them adrift, without hope of resuming the marital relation, perhaps to the injury of society and the destruction of themselves and their children.

The division of their property was not unfair.    The judgment is affirmed, each party to pay his or her own costs of this appeal.

DUNBAR and SCOTT, JJ., concur.

ANDERS, C. J., not sitting.

HOYT, J. (*dissenting*).—I cannot concur in the foregoing opinion of the majority of the court.    In my opinion the proofs show that the plaintiff was as much at fault as the defendant, for while I am satisfied that the defendant was a person of somewhat suspicious and jealous disposition, and that by reason thereof he at times acted in an

unreasonable and cruel manner toward the plaintiff, I am also satisfied that her conduct was such as to justify or greatly excuse such acts on his part. At the marriage altar plaintiff took the defendant for better or for worse, and it became her duty as soon as she discovered objectionable traits in his character to take every precaution reasonably possible on her part to modify and overcome such objectionable traits. This case made by her own testimony, and that of the witnesses in her behalf, shows that she did not appreciate her duty in this regard, for to me it appears clear from such testimony that after she became aware that her husband objected to her receiving any attention from the Mr. Bradley named in the proofs, she continued to receive such attentions in a marked degree. It may be true, as found by the majority of the court, that after the open rupture and threats of personal violence on the part of her husband against said Bradley, she no longer continued to receive his attentions, but her own testimony shows that long before this she knew that her husband was jealous of said Bradley, and that he requested her not to receive his visits or allow any attention whatever from him. It likewise appears from the testimony that instead of complying with such request on the part of her husband she continued to receive the most marked attention from said Bradley, and to allow him to visit her at her home during the absence of her husband, under such circumstances as might reasonably excite the suspicion of the most cautious and prudent of husbands. The duty of either husband or wife towards the other is such that each becomes bound to comply with the wishes of the other if at all reasonable. When one spouse objects to a line of conduct on the part of the other which can be refrained from without any great hardship or inconvenience it becomes his or her duty to comply with the wishes of the other in that regard, however innocent may be the conduct

to which objection is made. Of course objections may be made by one spouse to acts or conduct upon the part of the other of such a nature that it becomes a matter of conscience to continue in such line of conduct regardless of the objection, but such circumstances are rare. In almost all matters the duty is clear to refrain from conduct which is at all objectionable to the other party to the marriage contract. In the case at bar, all the circumstances taken into consideration, I think the acts of the wife were such as to justify even a prudent husband in manifesting his jealousy and objection to the course of proceeding as between the wife and said Bradley. It does not follow from this that the husband was justified in all that he did, as a prudent and reasonable man would have taken other and less public opportunities for expostulating with his wife as to her conduct. It does follow, however, in my opinion that she cannot now object and found any right upon his actions as against her when such acts on his part were the direct and almost necessary consequence of her own misconduct.

I agree with the majority that such extreme cruelty as will justify divorce may be perpetrated without any physical violence. For a husband to wantonly and without cause accuse his wife of want of chastity, and persist in the same, would in an ordinary case be cruelty of the highest degree, but it does not follow that such conduct on the part of the husband would in all cases constitute cruelty. There are cases where such actions on his part would not constitute cruelty, even where the wife was without fault. Whether or not it would amount to cruelty depends upon the effect which such words would have upon the wife. If a wife is possessed of intelligence in a high degree, and has, by education and associations, been surrounded by a refined and enlightened class, nothing would perhaps more seriously affect her mind, and through it her physical well-being,

than the use of such language on the part of the husband.
On the other hand, the surroundings and associations of
some wives have been and are such that the use of such
language on the part of the husband would have but little
effect on the mind and none at all upon bodily health.   In
such a case it would only be after proofs of the most un-
doubted character as to the malicious and wanton and
repeated use of such language that the court would be
justified in granting a divorce upon that ground alone.

In this case, instead of being satisfied that the actions of
the husband were wanton and malicious, I am clearly satis-
fied that they were made in the utmost good faith, and that
the husband really believed that he had cause for reprov-
ing his wife as he did.   And in view of his good faith, I
am not satisfied that his acts amounted to such extreme
cruelty as would have justified a decree of divorce even if the
wife had been without fault.   Jealousy, within reasonable
bounds, is a desirable rather than an undesirable charac-
teristic, and though a person is responsible for the proper
control of that characteristic the same as any other, yet the
want of control should be clear and absolute, and of such
a nature as to make the life of the other party to the mar-
riage contract practically unendurable before the court
should visit it with such an extreme penalty as that of de-
creeing a divorce to the other party on account thereof.

The parties to the marriage relation are not the only ones
interested in its maintenance.   If they were it is possible
that a divorce should be granted in this case.   But for the
protection of the family relation it has been thought wise
by legislatures and courts to provide that the marriage re-
lation when once entered into cannot be set at naught at
the will of the parties.   Such relation is considered a sacred
one, and public policy demands that it should only be set
aside for the gravest reasons.   Thus it has always been
held that however great the misconduct of one spouse, the

fact that the other spouse had been guilty of like miscon-
duct will be a perfect defense in an action for divorce.    To
grant a divorce in this case would, I think, nullify this rule.
It may be true that the defendant has been guilty of mis-
conduct, but it is also true that the wrongful acts of the
plaintiff induced such misconduct, and to allow her now to
take advantage of such misconduct, notwithstanding her
own wrongful acts in connection therewith, would be in
opposition to all the rules which have governed the action
of divorce from the earliest times.    I think the bill should
have been dismissed.