[No. 15082.   Department One.   May 13, 1919.]

MARTHA SMITH, *formerly Martha Frates, Respondent,*
v. LOUIS A. FRATES, *Appellant.*[1]

DIVORCE (100, 104)—CUSTODY OF CHILDREN — MODIFICATION — EVI-
DENCE AS TO WELFARE. A decree of divorce awarding the custody of
children of a grossly delinquent mother to the father, should not,
on the remarriage of both parties, be modified and their custody
awarded to the mother, where there is no question, from a material
point of view, that the father's home is to be preferred for the wel-
fare of the children, and the influence of the mother would be
prejudicial to their best interests.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered June 1, 1918, modi-
fying a decree of divorce as to the custody of chil-
dren, after a hearing before the court.   Reversed.

*Howard O. Durk,* for appellant.
*Longfellow & Fitzpatrick,* for respondent.

MITCHELL, J.—This controversy relates to the cus-
tody and welfare of three girls, now about twelve, ten,
and eight years of age, respectively.   Their parents,
the parties to the suit, were married on December 30,
1905, and divorced on August 18, 1917.   By the decree
of divorce, all three of the children were awarded to
the father.   Each of the parents has since remarried,
not one to the other.   Upon application of the mother,
the original decree was so modified that she was given
"the absolute custody and control of said minor chil-
dren," allowing the father to have them at specified
occasional short periods of time.   From the modified
decree, the father has appealed.

The history of the case gives us very little trouble.
The evidence is clear and convincing, much of it that

[1]Reported in 180 Pac. 880.

is most important being undisputed. At the time of
the marriage of respondent, Martha Smith (formerly
Mrs. Martha Frates), and appellant, Louis A. Frates,
neither had any means. They purchased a place upon
which a residence was built largely by his own labor
in the evenings and on holidays. About the only fault
she charged him with was the excessive use of in-
toxicating liquors while they were married, which is
positively denied by him, his close neighbors, and his
business career. He worked regularly for years for
the same employer, at constantly increasing wages;
and later conducted a business of his own, with em-
ployees to help. Among such employees, for some
length of time, was the present husband of respondent.
Appellant paid cash for his family expenses, modern-
ized their six-room residence, improved the grounds
with a lawn and fruit trees and owed only $700 on the
residence at the date of the divorce. Respondent be-
came frivolous, and finally habitually neglectful of
her home and children. She often spent whole days,
and more frequently afternoons and evenings until
late at night, without her husband, downtown and at
dances, leaving the children to be cared for by neigh-
bors, without appointments therefor oftener than
otherwise, until appellant would return from his work,
when he would get the supper and put the children to
bed. On account of her improper relations with ap-
pellant's brother, first denied but later admitted by
her when confronted by the accusation of her own
little daughter, she caused a lasting estrangement be-
tween the brothers. Still later, about July 16, 1916,
she voluntarily confessed to her husband her criminal
conduct with E. N. Smith, her present husband, who
at that time was an employee of her husband's.
Shortly, appellant's experience proved in no uncer-

tain way the verity of her confession. Within a little while, as she testifies herself, she deserted her husband while he was at work and the children were at school. She worked around at housework, corresponded with, and met Smith. In the meantime, for three or four months, appellant received the services of his children's maternal grandmother in caring for the children at his home, after which he placed them together, from time to time, at different homes of friends of his until after his second marriage. He preferred that she appear as plaintiff in the divorce suit. She gave him a conveyance of the property upon which there was a mortgage of $700 (since paid off by him), made no claim to the children at that time, and waived all claim for alimony. The decree entered in the divorce case on August 18, 1917, simply dissolved the bonds of matrimony existing between the parties, gave the care, custody and control of the three children to the defendant, and, as provided by statute, prohibited each party from contracting marriage with a third party within six months.

On the first day after the expiration of the limitation of time fixed in the decree, viz., February 18, 1918, she married Smith—the associate and author of her former delinquencies. She and her present husband own no property. After their marriage, they lived in a single housekeeping room in an apartment house until a few days before the hearing of her application for the custody of the children, when they rented and moved into a small house supplied with their furniture. Her husband works at one of the shipyards at Seattle where, notwithstanding the commonly-known high wages, he gets less than $4 per day for his work. She works at a store for small wages.

On the other hand, appellant and a partner conduct a growing business of their own which yields a net income of $200 per month to appellant. His present wife is the owner of a hospital in Seattle which receives the patronage influenced by twelve to fifteen reputable physicians. Her business is prospering and at the present time returns a net income of $300 per month. She takes an interest in the children, remaining at home until after they go to school, when she goes to her place of business for the day's work, returning in the late afternoon. Usually, on Saturday afternoons she takes the girls to a picture show or some other place of amusement, and on Sundays after they attend Sunday school she takes them out for a ride in appellant's family car. The children are well dressed and cared for at appellant's home, where they have the services of a housekeeper who has raised a family of nine children of her own.

The question of whether one of the parents shall prevail, in the spirit of victory over the other, is in no sense involved in this case. Their ways are divided; their rights are subordinate. The serious matter is the welfare of the children, who should be kept together, if possible, and not denied each the others' society. From a material point of view, there is no question appellant's home is to be preferred for the children. Other and more important considerations suggest the same course. In cases of divorce where children of very tender years are involved, other things being near equal, the mother is preferred as their custodian, more especially in the case of female children. But there are exceptions to this rule which become more controlling as the child grows older, the chief of which becomes impelling in the case of a female child as it reaches the age of ten or twelve

years. In the home of respondent and her present husband, these children would be constantly reminded of the past irregularities of a mother who, in order to finally consummate her present marriage, willingly and willfully abandoned her own children to their father whom she deserted. Such influences would be prejudicial to the best interests of the children, who should not be further denied their natural right simply out of respect for the holy institution of a mother's love, which in this case is proven to be dishonored by a maternal instinct more fancied than real. The children have lost their mother's influence; but no good reason is shown why they should lose the protection and care of their father.

Their best interests require a reversal of the decree appealed from, which is hereby directed.

CHADWICK, C. J., TOLMAN, MACKINTOSH, and MAIN, JJ., concur.