[No. 29050. Department Two. August 6, 1943.]

LESLIE W. MALEY, *Respondent,* v. MARGARET O. MALEY, *Appellant.*[1]

[1]Reported in 140 P. (2d) 262.

*Verne Towne* and *McCarthy, Royce, Hurley & Roberts,* for appellant.

*W. L. LaFollette,* for respondent.

GRADY, J.—On October 17, 1942, Leslie W. Maley filed a complaint against Margaret O. Maley, his wife, in which he alleged that, upon her return with their two minor children from a visit to her parents' home in Montana, she threatened to, and would unless restrained by an order of the court, leave their home near Thornton, Washington, and go to another state or states and take the children with her. An order was issued restraining the defendant from taking the children from the family home until further order of the court. It also provided that the plaintiff should have direct custody and control over the children. (They were taken from the home by plaintiff and placed in the care of a Mrs. Ruth Thompson, who resided near Belmont, Washington.) The order was made returnable October 30th, and served upon the defendant.

On October 27th, the defendant filed an answer to the complaint, together with a counterclaim, praying that she be granted an interlocutory order of divorce, that she be awarded the custody of the children, that an equitable division of the property acquired be made, and that an award of alimony and of maintenance for the children also be made.

On October 30th, the return date of the order, plaintiff filed a reply to the answer and counterclaim, consisting of a general denial, except the admission of the marriage, the births of the children, and the residence of defendant. On that day, both parties appeared in person and by their respective counsel and gave oral testimony. The court entered an order providing that, pending the trial of the action, the defendant should have the custody of the children.

On December 10th, the plaintiff filed an amended reply, in which, for the first time, he made the assertion that, during the married life of the parties, the defendant had been infatuated with other men, had other men coming to their home to see her over the protest of plaintiff, neglected the oldest child, went riding with men, entertained one Dixon at their home in the absence of plaintiff, refused to stay away from Dixon or have him stay away from her, absented herself from home, and refused to divulge where she had been or with whom; that, in the summer of 1942, she entertained a man in uniform for several days, went places with him, and took him to Spokane. He prayed that he be granted an interlocutory order of divorce and the custody of the children. The affirmative matter in the reply was denied by the defendant.

The court made and entered findings of fact in general terms, to the effect that the defendant had treated plaintiff in a cruel manner and rendered his life burdensome; that defendant was untrustworthy, undependable, and unreliable, and did not have the proper mother's interest in her children or their welfare; that she had neglected her home and children and refused to assume the normal duties devolving upon the wife of a farmer; that she had been guilty of improper conduct with other men; that she had spoken disparagingly of her children, and was not a fit and proper person to have their care and custody. The court awarded the plaintiff an interlocutory order of divorce,

the care, custody, and control of the two children, all of the property of the parties, and directed that he pay to the defendant the sum of six hundred dollars in monthly installments of one hundred dollars, and her attorneys' fees and costs. The defendant has taken an appeal from this order.

Upon a full consideration of the record in this case, the briefs of counsel, and their oral arguments, we are unable to accept the findings of fact made by the trial court in so far as they relate to cruelty and misconduct on the part of appellant and neglect by her of her home and children warranting the disposition made of the case. If the findings of fact made as to the more serious charges against the appellant by respondent depended upon conflicting testimony and the veracity of the various witnesses, we would be very reluctant to disturb them, but such charges are mainly dependent for their support upon the uncorroborated assertions of respondent and the construction to be placed upon them. The facts, so far as necessary for a decision of the case, are substantially as follows:

The appellant and respondent were married November 10, 1936, and established their home upon a wheat ranch in Whitman county, about two and a half miles from Thornton and about nine miles from Rosalia. The respondent and his brother, Arthur T. Maley, then were copartners in the operation of the ranch, which they rented, and they also farmed some other lands. Later, in March, 1939, they contracted to purchase the wheat ranch. As the record is not such that we are able to direct the entry of a decree adjusting the property rights of the appellant and respondent, the case will be remanded, and we shall not further discuss this phase of it.

The parties have two boys, their ages at the time of the trial being about five years and eleven months. Between the births of these children, a child was prematurely born and did not live. At the time of the

marriage, the appellant was eighteen years of age, and the respondent was thirty-one. The record does not show that any lack of harmony of a substantial nature existed between them until December, 1941, when they had a violent quarrel, brought on by respondent, at which time he threw groceries just purchased about the kitchen and shook the appellant. This was when the birth of the youngest child was imminent. The episode seems to have been the beginning of a change in attitude of the parties towards each other. While appellant was in the hospital on the occasion of the birth of the child, respondent suggested that she "hurry" home, seemingly having more interest in the work she would do there than any affectionate desire for her companionship. As soon as she got home, respondent commenced to complain about household expenses. The appellant's mother had come from her home in Montana to assist her daughter, but respondent's conduct towards her was such that she left their home three days after appellant returned from the hospital.

After her marriage, appellant did the housework, took care of the children, cooked for hired men, tended the livestock, did chores, made trips to town to get repairs for farm machinery, and otherwise sought to make the marriage a success. She received in return much criticism and fault finding on the part of respondent. As a result, and particularly after the birth of the youngest child, appellant lost weight and became very nervous and irritable.

During the latter part of September, 1942, appellant made a visit to her parents in Montana, and was absent from her home about nine days. What occurred and what was said between appellant and respondent on her return is in conflict, but it is quite apparent that a feeling of discouragement and discontent with her lot in life and future outlook was intensified by those with whom she had come in contact while away from home.

Her attitude appeared to the respondent to have changed, and he became impressed with the belief that she intended going to Detroit, Michigan, take the children with her, and either there or elsewhere obtain employment, and not return home. The appellant admitted that she had informed the respondent on her return from Montana that she was going to visit her sister in Detroit, and, though respondent objected to her doing so, she nevertheless made preparations to go. We are unable to determine from the record whether appellant actually intended to desert the respondent; but, if his version of the situation was correct, he was amply justified in seeking the aid of the court in preventing the children from being taken beyond its jurisdiction.

Both appellant and respondent had worked hard to obtain their objective of a home and a ranch of their own. Their over-physical exertions had, no doubt, caused mutual irritations and displays of temper towards each other. They had but little in the way of social life or recreation. The respondent had expected too much of appellant in the performance of labor outside of household duties. It is not surprising that appellant looked upon her future life with many doubts. The respondent failed to understand that his wife was still young in years and craved social contacts and that sympathy and encouragement were needed to bridge over troublesome times.

Although the respondent, in his amended reply to appellant's counterclaim, did not directly charge appellant with marital infidelity, yet, when we consider his testimony in support of his allegations of wrongdoing on her part, we conclude that, in both the pleading and his testimony, he meant to have it understood that his wife had been guilty of such on many occasions, had caroused with evil associates, and neglected her home and children. It would serve no useful purpose to recite his testimony in this opinion, but we are

not impressed with it. Many of the assertions made were based upon vague hearsay. Others were made without testimonial knowledge, and were stated as facts when they were wholly imaginative. We find nothing in the record showing any immoral acts on the part of the appellant, and, in our opinion, the findings of fact upon which the interlocutory order of divorce is based are not supported by a preponderance of the evidence.

If the respondent had been content to stand on his complaint and original reply to the counterclaim of appellant, sought relief on the former to prevent removal of the children from his home, and defended against the application of appellant for an interlocutory order of divorce, the trial court might well have decided that the evidence of appellant was not sufficient to warrant a divorce and have made an order preventing any threatened removal of the children beyond the jurisdiction of the court. But, when the appellant refused to return to the home after the children had been restored to her, respondent then filed an amended pleading, making the serious charges against appellant already referred to. When the hearing was had on the show cause order and respondent testified, he made no claim of immoral conduct on her part, but had words of praise for her, and his only complaint was that she was about to desert him and take the children beyond the jurisdiction of the court. We are of the opinion that the later charges were made in a spirit of vindictiveness and were actuated by malice.

The law applicable to the situation we now have before us is that, in a pleading filed in court, and by testimony in support thereof, accusations by a husband or wife that his or her spouse has been guilty of marital infidelity, if false and made maliciously without reasonable cause for suspecting the fidelity of the other spouse, may amount to cruelty and justify the granting of a divorce, particularly if accompanied by

proof of other acts and conduct of a cruel nature. *Scoland v. Scoland,* 4 Wash. 118, 29 Pac. 930; *Gibson v. Gibson,* 67 Wash. 474, 122 Pac. 15; *Jones v. Jones,* 60 Tex. 451; *Wagner v. Wagner,* 36 Minn. 239, 30 N. W. 766; *McNamara v. McNamara,* 93 Neb. 190, 139 N. W. 1045; *LaFollett v. LaFollett,* 138 Ore. 411, 2 P. (2d) 1109, 6 P. (2d) 1085; *Wiggins v. Wiggins,* 268 Ky. 352, 104 S. W. (2d) 1097; 27 C. J. S. 555, 556, § 28 b (1); 51 A. L. R. (annotation) 1191.

■ While the conduct of respondent towards appellant might not, in and of itself, have been sufficient to entitle her to a divorce, as much of it could be said to have been condoned, we think his conduct, coupled with the false charges of misconduct made by respondent in his pleading and testimony, constituted cruelty of such a character as to entitle appellant to an interlocutory order of divorce.

■■ We have held that the question of custody of children in a divorce proceeding is to be determined chiefly by what is best for their welfare; that each case must be judged by its own facts; that the natural mother of children, particularly if they are of tender years, will not be deprived of their custody unless it clearly appears that she is so far an unfit and improper person that her custody of them would endanger their welfare. Tested by these rules, we find from the record that the welfare of the children of appellant and respondent will best be served by awarding their custody to appellant.

■ As before stated, the record as to the property accumulated by respondent and appellant is not in such condition as to enable this court to direct the making of any order with reference to it. The value of the personal property is not made clear. Their property rights are interwoven with those of the respondent's brother, the extent of which is in dispute and will have to be determined by further testimony. In order to do

this, Arthur T. Maley and his wife should be made parties to the action.

The interlocutory order is reversed, except that part thereof awarding to appellant attorneys' fees and costs, which is affirmed, and the case is remanded to the lower court, with instructions to grant to appellant an interlocutory order of divorce from respondent, award her the care, custody, and control of their two children, and, after determining the nature, character, and value of their real and personal property, make such award to the appellant, in the way of a division of the property or for alimony and maintenance for herself and the children, or both, as to the court may seem proper. The order should provide for visitation privileges between respondent and the children and an inhibition against their removal from the jurisdiction of the court without an order of court.

The appellant will recover her costs and disbursements on this appeal and the sum of two hundred fifty dollars as attorneys' fees for its prosecution. Pending the final determination of the case, such award to appellant should be made for support and maintenance of herself and the children as the court may, in its discretion, determine, as well as suit money and attorneys' fees in such further proceedings as may be taken.

SIMPSON, C. J., BEALS, BLAKE, and ROBINSON, JJ., concur.

September 21, 1943. Petition for rehearing denied.