[No. 29272. Department Two. June 30, 1944.]

DOUGLAS BORNSTINE, *Appellant*, v. OLIVE LEONA BORNSTINE, *Respondent*.[1]

*George F. Hannan*, for appellant.

*Johnson & Dafoe*, for respondent.

MILLARD, J.—Plaintiff and defendant intermarried March 8, 1929, the fruit of which union was Douglas Bornstine, Jr., born May 13, 1932; Olive Dolores Bornstine, born April 13,

[1]Reported in 150 P. (2d) 60.

1933; and Bernadine Bornstine, born March 17, 1939. Plaintiff, assisted by his wife, prospered in the cleaning and pressing business in King county, acquired a substantial amount of property, and now has an income of approximately six thousand dollars annually from his business.

The evening of October 23, 1941, while in their common boudoir, the husband's soft advances were repulsed by the wife, for the reason, the wife in hearing on modification of decree testified, that her affection for him was alienated by his insane jealousy and oft reiterated charges of infidelity on her part. Accepting his promise to permit her to go to sleep if she would tell him who the other man was—plaintiff admits he charged her with an affair with a man other than the man who was guilty—defendant informed her husband that if she liked or cared for anyone it would be O. D. Neely, a married employee of plaintiff, but "I don't love him." Concluding, despite her denial to the contrary, that she was having "an affair" with Neely, the husband said, "Well, you can just get out, we are through."

The following morning she departed and took up residence with Neely's sister. The same morning Neely quit working for plaintiff. October 29, 1941, defendant entered into a written agreement prepared by an attorney retained by plaintiff—defendant was not represented by counsel at any time prior to filing of her petition for modification of the decree—transferring all of the community property to plaintiff. She also consented that, in the event of divorce of the parties, the decree should award care, custody, and control of the three children to their father, with the right in the mother to visit the children at reasonable times and hours.

October 31, 1941, plaintiff commenced action against defendant for divorce on the ground of cruelty. Defendant defaulted, interlocutory decree of divorce was entered December 2, 1941, and agreement above described was approved. Final decree of divorce was entered June 3, 1942. Eleven days later (June 14, 1942) defendant and O. D. Neely intermarried.

Mrs. Bessie Neely retained the same attorney who represented plaintiff in his divorce action to institute an action October 25, 1941, against O. D. Neely for divorce, trial of which resulted in entry of interlocutory decree in favor of Mrs. Neeley November 28, 1941. Neeley, who deserted his wife coincident in time with departure of Mrs. Bornstine from her home, accepted employment December 1, 1941, as engineer and houseman at the Weir apartments. He had an apartment there and it is admitted that Mrs. Bornstine immediately placed most of her clothing in that apartment, prepared three meals daily for Neely, and represented herself as the wife of Mr. Neely and acted as Neely's assistant. She denies that she "lived" with him or that she was guilty of illicit sexual practices.

July 7, 1943, defendant retained her present counsel who filed on her behalf a petition to modify the decree awarding divorce and custody of the children to plaintiff. On the grounds that plaintiff was not giving proper care and attention to the children and that since the entry of the decree she married O. D. Neely and can now provide a proper home for the children, she prayed that she be awarded custody of the children and that plaintiff pay to her one hundred dollars monthly for their support.

The court found that, prior to separation October 24, 1941, of plaintiff and defendant, the former was addicted to excessive use of intoxicating liquor and while intoxicated frequently called his wife vile names, accused her of infidelity due to which cruel treatment she lost all affection for her husband who forced her to leave her home and children when she refused to cohabit with him; that the property agreement of the parties was unfair; that petitioner is a fit and proper person to have the care and custody of the children; that she and her present husband (O. D. Neely), who is regularly employed and is willing to assist "in bringing up said minor children," are now in a position to provide a good and proper home for the children; that plaintiff has had a succession of housekeepers to care for the children, due to which condition the children were kept constantly in turmoil; that plaintiff failed to prove that

separation of plaintiff and defendant was caused by improper relationship of defendant with Neely; and that defendant is entitled to award of one hundred dollars monthly from plaintiff for support of the three children.

October 20, 1943, plaintiff filed motion for new trial. October 30, 1943, plaintiff's motion, supported by certain affidavits, to reopen the case was denied November 15, 1943, as was his motion for new trial. November 6, 1943, an order was entered, pursuant to defendant's petition therefor, directing plaintiff (on the ground that he was not a proper person to have custody of the youngest child during pendency of this action) to surrender immediately custody of Bernadine Bornstine to her mother.

November 15, 1943, in harmony with findings recited above, the court entered decree from which plaintiff prosecutes this appeal.

Appellant assigns as error the refusal of the trial court to consider the affidavits disclosing the misconduct of respondent and her present husband and the refusal of the trial court to permit appellant's counsel to make any offer of proof.

It is appellant's position that respondent in October, 1941, deserted her children in order to marry her present husband, who was then an employee of appellant. It is respondent's position that she was expelled from her home by appellant.

That respondent departed from her home in October, 1941, on the same date that her present husband quit the employ of appellant is undisputed. Respondent immediately took up residence with her present husband's sister. Neely's wife divorced him. Respondent's husband divorced her. Prior to the granting of decree of divorce in either case, respondent accepted employment as the assistant and the wife of her present husband in the care of an apartment house. On or about December 1, 1941, and continuously thereafter, although Neely was then a married man and she was not yet divorced from her husband, respondent and Neely represented themselves as married to each other and respondent prepared three meals daily

for him and kept most of her clothing in the apartment house where the two were employed.

From October 24, 1941, until March 17, 1942, she visited her children twice. The visits were made December 25, 1941, and March 17, 1942. The excuse advanced for not more frequently visiting her children was that the husband called her vile names in the presence of the children. Mother love is not so timorous. A mother who loves her child or children will undergo any physical and mental agony and face any peril to see or be with her children. That she visited her children only twice in five months is not consistent with her present declaration of love for and desertion of those children to marry Neely. It is not understandable why she would await until July, 1943, to endeavor to obtain custody of her children, which was more than a year after her marriage to her second husband who then was as able as now to care for those children.

The evidence does not preponderantly support the finding that appellant is a drunkard. The testimony of respondent that appellant was addicted to the excessive use of intoxicating liquor is refuted by the fact that he successfully conducts two places of business, which net him six thousand dollars annually, and he has acquired a substantial amount of property. Admitting, for the sake of argument, that appellant was cruel in accusing respondent of infidelity, we are mindful of the evidence that only two charges of that nature were made, one of which was a contributing cause of the present divorce; and, under the evidence, it is clear that there was a basis for the husband's suspicion and accusation. There can be no other reasonable inference from the evidence than that respondent was, in October, 1941, when she abandoned her children and Neely deserted his wife, in love with and intended to marry her husband's employee, Neely.

It must be assumed that the trial judge who granted the divorce to Bornstine made other than a perfunctory investigation, and was convinced by that investigation that the conduct of the mother was such that the welfare of the

children would be served by depriving the mother of the custody of the three children.

Soon after respondent left her home with appellant, with whom she left her children in whom she manifested such little interest that she visited those children only twice within a period of five months, she commenced to live with her present husband as his wife and shortly following final decrees in the two divorce cases respondent married Neely.

The trial court erred in refusing to consider the affidavits which, if true, established the fact that respondent carried on an improper relationship continuously with Neely since her separation from appellant, and tends to prove appellant's charge that she was guilty of misconduct on or about October, 1941, when she left appellant and her children. The welfare of the children was the paramount issue; hence, the trial court should have considered the affidavits to ascertain whether respondent was a fit mother to have custody of her children. The general rule that as between a mother and a father the mother is preferred as custodian of the children is subject to the exception that the father is preferred where a mother who, in order finally to consummate her present marriage, willingly abandoned her own children to their father whom she deserted. *Smith v. Frates*, 107 Wash. 13, 180 Pac. 880.

To affirm the award of one hundred dollars monthly to respondent under the guise of support of the children would be to place a premium on infidelity and reward one who caused the breach of marital vows. If respondent's present husband loves her and her three children by appellant and is financially able (as respondent contends) to provide a proper home for his three stepchildren, surely the stepfather is not so lacking in regard for propriety as to demand or accept financial assistance from his marital predecessor.

In *Smith v. Frates*, 107 Wash. 13, 180 Pac. 880, we held, under facts similar to those in the case at bar, that the trial court erred in modifying a decree of divorce awarding the custody of children of a delinquent mother to the

father on the remarriage of both parties and awarding to the mother the custody of those children. We said:

"The question of whether one of the parents shall prevail, in the spirit of victory over the other, is in no sense involved in this case. Their ways are divided; their rights are subordinate. The serious matter is the welfare of the children, who should be kept together, if possible, and not denied each the other's society. From a material point of view, there is no question appellant's home is to be preferred for the children. Other and more important considerations suggest the same course. In cases of divorce where children of very tender years are involved, other things being near equal, the mother is preferred as their custodian, more especially in the case of female children. But there are exceptions to this rule which become more controlling as the child grows older, the chief of which becomes impelling in the case of a female child as it reaches the age of ten or twelve years. In the home of respondent and her present husband, these children would be constantly reminded of the past irregularities of a mother who, in order to finally consummate her present marriage, willingly and willfully abandoned her own children to their father whom she deserted. Such influences would be prejudicial to the best interests of the children, who should not be further denied their natural rights simply out of respect for the holy institution of a mother's love, which in this case is proven to be dishonored by a maternal instinct more fancied than real. The children have lost their mother's influence; but no good reason is shown why they should lose the protection and care of their father."

The evidence is clear that appellant loves his children and takes an active interest in caring for them; that the children are in the best possible environment; and that, as testified by the principal of the school which the children attend, the conduct of those children is fine; and that they are among the most dependable children in the school cannot be gainsaid. It is true that appellant is now separated from his second wife, who proved faithless, and that he has had some difficulty in obtaining a competent housekeeper—it is a matter of common knowledge that there is a shortage of woman-power as well as man-power—but the children are now receiving the care and love which

they should have from a father who is able and willing to give to his three children that care and attention they should have.

When respondent visited the children the second time, March 17, 1942, appellant, so respondent testified, called her vile names. Appellant denied this charge. This was only the second time since October, 1941, respondent had visited the children whom she now claims she loves dearly. This was the first opportunity appellant had, of which he may have availed himself, to address his wife as charged. We find no evidence of any other occasion where he used rough or profane language in the presence of the children. While censurable for such conduct, if guilty as charged, all that is necessary to prevent a recurrence is for a court to enter a proper order, the violation of which would result in the punishment of appellant for contempt. This conduct, weighed with the other acts, is too light in considering the welfare of the children to be determinative of the question whether the father shall retain custody of the chilren who were abandoned by their mother.

"We deem it proper, however, to say that the decree gives the appellant the right to visit the child, and that this right cannot be denied her by placing the child where appellant will be met by insulting epithets when in the exercise thereof. It is not necessary to repeat the shocking language which the respondent's father applied to the appellant. If he or any member of his household in the future treats her with such incivility, when she is visiting her daughter, as to deter her from continuing her visits, she may again apply to the court of first instance for a modification of the decree, or for a rule on the respondent to show cause why he should not be punished as for a contempt." *Bedolfe v. Bedolfe,* 71 Wash. 60, 63, 127 Pac. 594.

The judgment of the trial court should be reversed, the custody of the children should remain as it was under the decree of divorce, and a new trial should be granted. It is so ordered.

SIMPSON, C. J., BLAKE, ROBINSON, and MALLERY, JJ., concur.