Charles Herbert RHODES, Appellant,

v.

Marilyn L. RHODES, Appellee.

No. 107.

Supreme Court of Alaska.

April 24, 1962.

Wendell P. Kay, Anchorage, for appellant.

Theodore F. Stevens, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This appeal is prosecuted by the husband in a divorce action. He questions the award of custody of the children of the parties to the wife and the property division made by the trial court. We shall consider the custody issue first.

The wife, as plaintiff below, sought a divorce on grounds of incompatibility and asked for custody of the five children born of the marriage. The husband countered with an amended answer and cross-complaint, likewise asking for a divorce on grounds of incompatibility and for custody of the children. Both parties allege that they are fit and proper persons to have the custody of the children and each denies that the other is such a person. At the time of the trial, November 1960, the children ranged in age from four to twelve years, the three older ones being boys.

The court in its findings of fact found, among other things, that a gross incompatibility of temperament existed between the parties, harmful to them and the children, and that, while both parents were fit to have custody, "under the circumstances of this case, the welfare and interests of the children would best be served by awarding their sole custody to the mother," and then concluded that the wife was entitled to a decree of divorce and sole care and custody of the children. A decree was entered accordingly, reserving to the husband, however, the right of reasonable visitation.[1]

Section 56–5–13 A.C.L.A.1949 vests jurisdiction in the trial court, in a case of annulment or divorce, to provide for the care and custody of minor children as it may deem just and proper. This places a grave responsibility upon the court and at the same time gives it a broad discretion. In determining the custody of children the trial court should be guided by the rule of quite general application that the welfare and best interests of the children should be given paramount consideration.[2] Also, consideration should be given to the desirability of keeping the children of the family together so that they may enjoy the normal condition of childhood of growing up together as brothers and sisters.[3]

Having in mind the foregoing legal principles and the fact that the children in this case are all of an age when they need each other's company and the love and attention of a mother in the home, and having gleaned from an extensive record that the plaintiff knows the needs of her children and is intent upon being in the home with them and administering to their needs so that they may be able to grow up into healthy, good, normal individuals, we cannot say, as contended by the defendant, that it was

1. Following the entry of the decree, proceedings were instituted by the plaintiff and a hearing held on an order to show cause why the defendant should not be found in contempt of court, enjoined from deprecating the plaintiff in the presence of the children, and restricted in his visitation rights. The court found that the defendant had not complied with the order of the decree respecting reasonable visitation rights and, therefore, ruled that the right of reasonable visitation be removed from the decree and that, "if he [the defendant] visits with the children it's going to be on the say of the plaintiff." The plaintiff then served and filed a "Consent" that the defendant visit with the children according to a schedule which appears to us to be reasonable and in the best interests of the children.

2. Brashear v. Brashear, 71 Idaho 158, 228 P.2d 243, 246 (1951); 2 Nelson, Divorce and Annulment, § 15.02 (2d ed. 1945).

3. Brashear v. Brashear, supra note 2, at 246, of 228 P.2d; Smith v. Frates, 107 Wash. 13, 180 P. 880 (1919); 2 Nelson, op. cit. supra note 2, § 15.18.

against the clear weight of the evidence[4] for the trial court to find that

> "The plaintiff is a fit mother, the defendant is a fit father; however, under the circumstances of this case, the welfare and interests of the children would best be served by awarding their sole custody to the mother, plaintiff herein."

Nor can we say that the trial court abused its discretion in awarding the sole care and custody of the children to the mother; therefore, the decree will not be disturbed in that respect.[5]

The second principal issue raised by the defendant is that the court erred in awarding a very substantial and grossly unfair amount of the property of the parties to the plaintiff in the absence of any prayer by her for the property settlement decreed and without sufficient evidence. Important as this issue would seem to be, the defendant has seen fit to treat it in only two pages of a twenty-eight-page brief, and the arguments he advances in support of his position are for the most part couched in generalities not applicable to the particular circumstances of this case.

In her complaint, the plaintiff alleged that "there are property rights to be adjudicated" by the trial court, and then set forth the equity of the parties in the family home, on which there is owing a balance of about $26,500, and the printing business operated by the defendant. These allegations of the complaint are admitted by the defendant and in his cross-complaint he, in turn, alleged that "there are property rights in real and personal property to be adjudicated by the Court" and prayed for a settlement of those property rights. It is true that the plaintiff did not in her prayer for relief ask for a judicial division of the property of the parties, but she did ask for such other and further relief as the court might deem equitable and just in the premises. Furthermore, we note that in their opening statement at the trial counsel for both parties informed the court that there were property rights which would have to be adjudicated.

In our opinion, such a state of the record would alone have justified the trial court, once having assumed jurisdiction in equity as it did here, to afford complete relief, including the adjudication of the property rights involved.[6] However, in Alaska we have an even more certain guide, for Civ. R. 54(c) specifically provides:

> "A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, *every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party* has not demanded such relief in his pleadings." [Emphasis supplied.][7]

We conclude that the court had full power to adjudicate the property rights of

4. Civ.R. 52 provides that in all actions tried without a jury, as in the instant case, the trial court's "findings of fact shall not be set aside unless clearly erroneous * * *."

5. See Sigesmund v. Sigesmund, 115 Cal. App.2d 628, 252 P.2d 713 (1953); Hendricks v. Hendricks, 69 Idaho 341, 206 P.2d 523, 527, 9 A.L.R.2d 617 (1949); McBride v. State, No. 66, 368 P.2d 925 (Alaska 1962), wherein we held that, on appeal, the discretionary decisions of the trial judge will be reversed only if there has been a clear abuse of discretion.

6. See Cobb v. Whitney, 124 Okl. 193, 255 P. 577 (1926); Hearn v. May, 207 Ore. 514, 298 P.2d 177, 178 (1956).

7. Even without a statute or a rule of court such as Civ.R. 54(c), some jurisdictions hold that in a divorce action the court as representative of the public interest has the power, irrespective of a contract settlement or the silence of the pleadings with reference thereto, to make a fair and just disposition of the property rights of the parties. See Queen v. Queen, 44 Cal.App.2d 475, 112 P.2d 755, 757 (1941); Hopping v. Hopping, 233 Iowa 993, 10 N.W.2d 87, 90, 152 A.L.R. 436 (1943); Fincham v. Fincham, 160 Kan. 683, 165 P.2d 209, 214 (1946), modified 161 Kan. 753, 173 P.2d 244 (1946).

the parties to this action even though the plaintiff had not specifically prayed for such relief. That leaves the question of whether the award of certain property to the plaintiff was in a fair and just amount.

The record discloses that the property of the parties was practically all acquired after marriage, and by their joint efforts [8] in the sense that the plaintiff during the first years of the marriage worked for others or helped her husband in his business from time to time, and at other times she contributed by bearing and rearing the five children of the marriage and maintaining the home. She may not always have measured up to the high standards of frugality, cleanliness, order and punctuality expected by the husband, but she appears to have worked at it rather consistently for thirteen years.

The principal items of property acquired during the marriage consisted of a dwelling house, with a rental unit, in the rear, of an appraised value of $26,000 subject to a mortgage of about $5,000; the home of the parties appraised at $29,500 and mortgaged for $28,000; a vacant downtown city lot appraised at $25,000; a five-acre homesite worth about $2,500; a half interest in a four-acre tract, which interest was purchased for $750.00 in 1960 but the actual value of which does not appear in the record; a half interest in a periodical publication, valued at about $2,500; a 1958 Chevrolet Suburban automobile; and the Anchorage Printing Company, being all personalty, of which the parties were joint owners and from which they derived an annual gross taxable income of about $22,-000 [9] during 1958 and 1959, according to the plaintiff's testimony.

The court found the property interests of the parties to be as above set forth and that the plaintiff was entitled to be awarded the $26,000 dwelling house and rental unit and the family home; that she should also receive from the defendant the sum of $33,000, payable at the rate of $400 per month, to enable her to discharge the encumbrances against these properties; and that the remainder of the property above listed should be awarded to the defendant, the realty portion thereof to be subject to a lien to secure payment of the $33,000 mentioned.[10] These findings were made the basis for the conclusions of law and decree entered by the court below. The defendant charges that it was error for the court to award real property and a money judgment for $33,000, secured by a lien, to the plaintiff, since there was no substantial evidence to support such an award and because the award was contrary to the weight of the evidence.

■■ All property of the parties, both separate and joint, is before the court for disposition in a divorce action. It is so provided by section 56-5-13 A.C.L.A.1949. The sixth subdivision of the statute empowers the court to divide the property between the parties "in such manner as may be just, and without regard as to which of the parties is the owner of such property * * *." Here, as in the case of child custody, the matter is left to the broad discretion of the court, and we will not reverse except upon a showing of abuse of discretion.[11]

8. There was evidence that the defendant had saved $1000 from his Navy pay which he used for the down payment on the first home of the parties.

9. When the court handed down its oral decision regarding the division of the property, the defendant commented that the $22,000 income testified to by the plaintiff was reckoned on an accrual basis, but that the actual cash income was only $14,000. This statement was not under oath.

10. The trial court also divided other personal property of the parties but that does not concern us here.
   We regard the money award of $33,000 to the plaintiff as a part of the property division in this divorce action. See Bennett v. Bennett, 208 Ore. 524, 302 P.2d 1019 (1956).

11. See Perrine v. Perrine, 86 Cal.App.2d 58, 194 P.2d 126 (1948); Carter v. Carter, 39 Idaho 798, 230 P. 768 (1924); Forrey v. Forrey, 167 Kan. 77, 204 P.

■ In view of the record the property division appears to us to be inequitable and unfair. The husband has to pay over to the wife every month in cash the sum of $625 as child support, plus $400 in reduction of the indebtedness against the two pieces of real estate awarded to her. This money has to come out of a business for which the net monthly income was never established at the trial.

If, as Mr. Rhodes contended in quasi argument to the court as the property division was pronounced from the bench,[12] the actual annual income from the business was only $14,000 and the business itself was $50,000 in debt, then the property division as it now stands could well leave the defendant without any money for his own living expenses and lead to insolvency and even ultimate loss of the business to the detriment of both parties and the children.

We realize that it was the responsibility of the defendant and his counsel, who represented him at the trial, to call these matters to the attention of the court by the timely production of evidence. But where a miscarriage of justice seems so apparent as it does here we cannot stand idly by and refuse to act. Accordingly, under the provision of Rule 51(b) of this court[13] we conclude that that portion of the decree dividing the property of the parties should be set aside and the case remanded with directions to the trial court to receive such additional competent evidence as either party may wish to present on the property division issue and then enter new findings of fact, conclusions of law and judgment on the issue in question.

■ There are several other points raised by the defendant on this appeal which need to be considered. The first is that the court erred in reaching a decision with respect to the custody award before argument of counsel and before all of the evidence had been presented. We have examined the record on this point and find that the parties had both rested and completed their arguments before the court announced its decision. It does appear that counsel for plaintiff was concerned about putting in some rebuttal evidence with regard to incompatibility and child custody after the defendant had rested. He was assured by the court that such evidence would not be necessary to assist the court in its decision. This statement by the court amounted to a ruling that any further testimony on the issues mentioned would be cumulative and therefore inadmissible. Without more ado, the parties proceeded to make their closing arguments. The trial court was "vested with a sound discretion as to the permissible scope of evidence offered in rebuttal."[14] We find no abuse of that discretion in this instance. The plaintiff is not complaining against the ruling. If the defendant had desired to put in additional evidence at this stage of the proceedings, he could have asked permission to reopen his case.[15] He did not choose to do so.

■ The defendant also claims that the court made the property award without giving him an opportunity to argue or discuss the matter and in the absence of his counsel. In the record we read that, after orally announcing that it was awarding the divorce and child custody to the plaintiff, the court made the following statement:

"Now I believe about the only thing left is for the Court to dispose of the real property and the balance of the personal property, which is why I stated at the start that this would be a partial judgment. I expect to have by tomorrow at 1:30 p. m. final findings in re-

---

2d 725, 728 (1949); Trotman v. Trotman, 322 Mich. 22, 33 N.W.2d 646 (1948).

12. This episode in the case is discussed at the end of our opinion.

13. Sup.Ct.R. 51(b) provides, *inter alia*, that this court may remand a case and require such further proceedings to

be had as may be just under the circumstances.

14. Johnston v. Brewer, 40 Cal.App.2d 583, 105 P.2d 365, 368 (1940).

15. See First Nat. Bank of Saco v. Vagg, 65 Mont. 34, 212 P. 509 (1922).

gard to the real property and the balance of the personal property, so at that time the parties may appear and at that time I will give you the information so you can complete the judgment in that respect."

On the following day at the appointed time, plaintiff appeared in court with her attorney and the defendant appeared personally but without counsel. Neither party offered any argument at this time. The purpose of this meeting in court was to supply the parties with the information necessary to complete the judgment. The proceeding, as plaintiff points out, was no longer adversary and so the defendant has no grounds for complaint.[16] The failure of defendant's counsel to appear on this occasion was through no fault of plaintiff or the court. We find no reversible error on this point.

Reversed and remanded as to the property division portion of the decree, with directions to the trial court to proceed in accordance with this opinion; and affirmed in all other respects.

16. Cf. Fitzgerald v. Clark, 17 Mont. 100, 42 P. 273, 285, 30 L.R.A. 803 (1895), aff'd on other grounds 171 U.S. 92, 18 S.Ct. 941, 43 L.Ed. 87 (1898).