Archie Boyd CRUME, Jr., Appellant,

v.

Shirley Sanders CRUME, Appellee.

No. 198.

Supreme Court of Alaska.

Jan. 28, 1963.

T. Stanton Wilson, Wilson & Wilson, Anchorage, for appellant.

Bailey E. Bell and Francis J. Nosek, Jr., of Bell, Sanders & Tallman, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This action was commenced by the husband seeking a divorce on grounds of incompatibility of temperament caused by the fault of the wife through her "excessive use of intoxicating liquor, which has lead [sic] her to violent unpredictable actions."

In an amended answer the wife denied the allegations as to incompatibility and cross complained for a divorce in her behalf, apparently on grounds of cruelty and personal indignities.

The husband was the first witness to testify at the trial. At the conclusion of the husband's testimony, but before he had rested his case in chief, the trial court decided that a divorce should be granted to the wife in language as follows:

"[T]he plaintiff [husband] asks for a divorce on grounds of incompatibility of temperament, and in effect the defendant [wife] does the same thing—they don't get along. I think it's been well established that they don't get along, and I believe there's enough before the Court after hearing testimony of plaintiff to find that a divorce should be granted on grounds of incom-

patibility of temperament, and the Court grants such a divorce on behalf of the defendant, and the only thing before us now is the determination on property settlement and whether or not there should be alimony."

The husband now claims that the trial court committed error in granting the divorce to the wife on his testimony alone [1] and before any evidence had been elicited from the wife on her cross-complaint. In his brief he states that he was prepared to call other witnesses, who were present in court, to substantiate the grounds for divorce alleged by him, and that he "rested his case at the decision of the Court when the Court restricted the introduction of further testimony."

█ The record reveals that the trial judge was unduly precipitate and even arbitrary in limiting the evidence on the question of which party was at fault. We have previously mentioned the undesirability of premature decisions made before all available competent evidence on the question has been heard.[2] We would reverse and remand this case for a new trial were we not of the belief that the revision of the $10,000 award we are providing for in this opinion will result in substantial justice being done in this case.

█ The second error specified [3] by the husband is the refusal of the court to permit

---

1. On cross-examination the husband admitted:

    (1) That the wife knew that he meant it when he informed her parents that he would never marry a woman who would not drink with him; that he and his wife always had a few cocktails before dinner; and that he supplied her with some of the whiskey which she drank "many a morning" on arising;

    (2) That shortly before filing for divorce the husband took a certain woman and her lady friend out "for drinks a couple of times" and once for dinner; that he and the woman in question would occasionally see each other on the railroad train where they worked, he as an engineer and she in the diner, and that soon after the commencement of this action they took an automobile trip to-

gether to the "South 48" states and into Old Mexico, the husband going along to help the woman drive;

    (3) That he had struck his wife on several occasions and once bit her finger so that she required medical attention to the amount of $405, although he always acted only in self defense.

2. Trusty v. Jones, Opinion No. 71, 369 P. 2d 420 (Alaska 1962).

3. The second specification of error reads: "The Superior Court erred in not allowing testimony showing the conduct of appellee [wife] after the date of separation and the date of filing the divorce action, since it is especially relevant testimony in considering alimony. (T 51–52)."

him to testify concerning certain misconduct of his wife after the filing of the complaint. He urges in his brief that such testimony was admissible because it had a direct bearing on the question of whether or not the wife was entitled to alimony. However, that was not the reason he urged below. There he argued that the evidence was admissible to show a pattern of behavior which existed before the divorce. Furthermore, the specification does not set out the full substance of the evidence rejected.

Supreme Ct. R. 11(a)(6) is directly in point here in its requirements that

"When the error alleged is to the admission or rejection of evidence, *the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected,* and refer to the page number in the transcript as contained in the record on appeal where the same may be found." [Emphasis added.]

Since the requirements of our rule have been disregarded, we need not consider the error intended to be urged.[4]

The next four specifications of error all relate to the admission or rejection of evidence and, as in the case of the second specification discussed above, they set out neither the grounds urged at the trial for the objection nor the full substance of the evidence admitted or rejected. Therefore, these specifications need not be considered.[5]

The only other issue raised by the husband is that contained in his seventh specification of error to the effect that the trial court abused its discretion in granting the wife substantially all of the accumulated property of the parties and a $10,000 judgment to be paid at the rate of $200 per month.

The trial court found that the parties own their home in Anchorage in which, at the time of the trial, they had an equity of about $18,000 or $19,000 and against which there was an encumbrance of between $11,000 and $12,000; that the husband had a reserve for pension fund coming to him from the Alaska Railroad of between $8,300 and $8,500; and that his earnings for the three years indicated below were as follows:

| 1958 | $12,292.61 |
| 1959 | 15,329.59 |
| 1960 | 14,525.00. |

The court further found:

"[T]hat the defendant [wife] is now suffering from instability, is very nervous and is not able to go out and earn a livelihood for herself and that due to the plaintiff's [husband's] earning power and due to the fact that the defendant was injured while living and cohabitating with the plaintiff, and due to the fact that the injury resulting in the disability of the left hand was caused by a bite inflicted by the plaintiff on the defendant, that the defendant should have judgment against the plaintiff giving to her, as a perpetual place to live, the home property as her own separate property and included therein the furniture, furnishings, fixtures and equipment therein; and in addition thereto a lump sum judgment against the plaintiff for the sum of TEN THOUSAND DOLLARS ($10,000.00), together with all costs of this action including attorneys' fees; and that the plaintiff is to have as his separate property this reserve at the Alaska Railroad, which is a retirement fund, free and clear of any claim of the defendant herein; that he have his automobile, the property at Sunshine, all of his personal effects, his bank ac-

---

4. Parks v. Brown, Opinion No. 57, 368 P.2d 220, 222 (Alaska 1962).

5. Ibid.

count and all cash that he has now in his possession and under his control." [6]

On the basis of the foregoing findings the court concluded and decreed that the wife should have the family home and all the furnishings therein for her own and "a lump sum in lieu of any other alimony" for $10,000, payable at the rate of $200 per month; and that the retirement reserve should be the sole and exclusive property of the husband and that he should be awarded the Sunshine property, the automobile, and all his clothing and personal effects.

In his specifications of error the husband does not attack any of the findings of fact above related, but asserts that the decree and judgment of the court as to the division of the property and the $10,000 award to the wife was "excessive, arbitrary, and a clear abuse of discretion." He asks us to restore half of the "community property" to him and reduce the "alimony" in conformance with the proportion of property accumulated prior to the marriage or, in the alternative, grant him a new trial.

■■ First, with respect to the judicial division of the property in this case, that is a matter left by statute [7] to the broad discretion of the trial court and will not be disturbed on appeal unless an abuse of such discretion is shown.[8] To establish an abuse of discretion the aggrieved party must show that the property division was clearly unjust.[9]

■■ In the instant case the husband contends that the distribution of the property was unjust in that he was forced to transfer to the wife his one-half interest in a home which had been paid for solely with assets which he owned prior to the marriage and from his earnings during the marriage. Although in some jurisdictions there would be a distinction drawn between assets acquired prior to coverture and those acquired subsequently in a case such as we have under consideration here,[10] that is not necessarily so in Alaska where all property, both separate and joint, is before the court for disposition and subject to the exercise of the court's discretion.[11] Under the facts and circumstances of this case as they appear in the record before us, we cannot say that the court abused its discretion in awarding the family home to the wife.

■■ We are disturbed, however, by the size of the money award to the wife in lieu of alimony. The husband having been found to be the party at fault for the failure of the marriage, it lay within the discretion of the trial court to make an award of alimony to the wife, for section 56–5–13 ACLA 1949 provides:

"Whenever a marriage shall be declared void or dissolved the court shall have the power to further decree as follows:

\*　　\*　　\*　　\*　　\*　　\*

"Third. For the recovery of [from] the party in fault such an amount of money, in gross or in installments, as may be just and proper for such party to contribute to the maintenance of the other \*　\*　\*." [12]

6. Other than the retirement fund, the only other property awarded to the husband, which had a determined value as shown by the record, was a 1952 Pontiac automobile worth $150 and a cabin at Sunshine, Alaska, of an approximate value of $1,000.

7. Section 56–5–13 Sixth A.C.L.A.1949.

8. Rhodes v. Rhodes, Opinion No. 83, 370 P.2d 902, 905 (Alaska 1962).

9. Merrill v. Merrill, Opinion No. 62, 368 P.2d 546 (Alaska 1962).

10. See Bissett v. Bissett, 375 Ill. 551, 31 N.E.2d 955, 133 A.L.R. 855 (1941).

11. Section 56–5–13 Sixth A.C.L.A.1949; Rhodes v. Rhodes, supra n. 8, 370 P.2d at 905.

12. The husband insists that for an incompatibility of temperament to exist in a marriage, both parties must be at fault and therefore neither party would be entitled to alimony. He cites no authority for his hypothecation and we have found none. On the contrary, in considering a somewhat similar problem under section 12 of the Divorce Law of the Virgin Islands, identical in language to section 56–5–13 Third A.C.L.A.1949, the United States Court of Appeals for the Third Cir-

In awarding cash in lieu of alimony to the wife the trial judge, no doubt, took into consideration all of the factors enumerated in his findings as to the wife's physical condition, earning capacity and future needs. But he seems to have entirely overlooked one other factor which counsel for the husband mentioned in his closing argument and which must be considered; namely, the husband's fifteen-year old daughter by a prior marriage, for whose custody, sustenance and education the husband is alone responsible.[13]

The uncontradicted testimony of the husband is that the daughter is in the tenth grade, attending school in the "South 48"; that he plans to send her to college; that it will cost the husband approximately $250 per month to sustain and educate this child; that the child is receiving psychiatric care "for a disturbance and warping of her personality"; that his own personal minimal monthly requirements amount to $400; that his net earnings in 1960 were $10,006.34 (or $833.86 per month); and that he owes about $3,000 for debts contracted during the marriage.

When we measure the husband's net monthly income against his monthly expenses, we find that he would be unable to meet the $200 monthly payments which the trial court has required him to make to the wife. Taking into consideration all of the facts and circumstances heretofore mentioned we conclude that the money award to the wife is excessive and should be reduced from $10,000 to $2,500, which the husband shall pay to the wife forthwith at the rate of not less than $100 per month. The trial court is directed to modify the decree accordingly, and, as so modified, the judgment is affirmed.

Affirmed as modified.

cuit held that the section authorized the court to require the party at fault to contribute to the maintenance of the other party, if it is just and equitable and in the public interest to do so, "even though the other party be also somewhat at fault." Burch v. Burch, 195 F.2d 799, 811–812 (3d. Cir. 1952).

13. Swolec v. Swolec, 122 Neb. 837, 241 N.W. 771 (1932).