**Solomon Bunch MOORE, Appellant,**

**v.**

**Lena Eliza MOORE, Appellee.**

**Lena Eliza MOORE, Cross-Appellant,**

**v.**

**Solomon Bunch MOORE, Cross-Appellee.**

**Nos. 1534, 1540.**

Supreme Court of Alaska.

July 21, 1972.

Ernest Z. Rehbock, J. L. McCarrey, Jr., Anchorage, for appellant and cross-appellee.

Joseph W. Sheehan, of Rice, Hoppner, Blair & Associates, Fairbanks, for appellee and cross-appellant.

Before BONEY, C. J., and RABINO-WITZ, CONNOR, ERWIN and BOOCH-EVER, JJ.

## OPINION

CONNOR, Justice.

Both Sol and Lena Moore are appealing from a judgment of property division, rendered in conjunction with a decree of divorce.

### I

After ten years of marriage, the Moores were granted a divorce on the grounds of incompatibility of temperament. At the time of the divorce Lena was 48 years old and Sol was 51. No children were born of the marriage.

Lena and Sol began keeping company about two years before their marriage in April of 1960. At that time Lena was a widow with a twelve year old son. She worked at certain jobs, and earned about $650 a month. Lena describes the two years before the marriage as an informal partnership in which she and Sol pooled their resources, invested their money, and worked together in preparation for their marriage.

Sol admitted at trial that Lena worked very hard during their marriage. She was employed for eight out of the ten years of their married life. She worked for Sol in his fledgling rental car business for 5½ years, but was paid only sporadically. During the marriage Lena placed her earnings in a joint checking account. She was the family housekeeper and took care of the family accounting.

Lena left Sol without warning on April 17, 1970. She took with her certain items of personal property, $13,000 in cash and the 1970 family Chevrolet.[1] Lena reestablished herself in California and began to work there in February of 1971. She now earns between $400 and $500 a month and is in good physical health.

Sol brought more assets into the marriage than Lena. Two of the principal assets in the property division after the divorce had at least partial roots in Sol's premarital separate property. It is unclear when Sol acquired an interest in the lots 5, 6, 7, 8, 9 and 10 of the Smith Ranch Subdivision. It appears that lot 5 was purchased after the marriage. Two and possibly three of the remaining lots were probably acquired by Sol before his involvement with Lena. The remaining two or three lots were purchased sometime during the two years before the marriage when Lena claims they were pooling their resources and investing their money together. Approximately a year before the marriage Sol began construction of the family home on lot 6 and Lena aided him in the lighter aspects of that construction. Sol testified that he had no business arrangements with Lena before the marriage. He said that Lena was good to him at this time and he tried to reciprocate. Sol also obtained his interest in the car rental business prior to the marriage. The business was at "a low ebb" when the couple married.

Like Lena, Sol worked very hard during the course of the marriage and their assets

---

1. Shortly after she left Sol, Lena traded the Chevrolet for a 1970 Buick. She received $3500 for the Chevrolet and paid the rest of the $6,000 purchase price of the Buick.

increased in value. Sol built an apartment on lot 7 and purchased lot 5. In August of 1961 Sol deeded lots 6, 7, 8, 9 and 10 to a third party who deeded them back to Sol and Lena as tenants by the entirety. Through their combined efforts the car rental business flourished. Sol sold the business in January 1967 and the proceeds of this Lundgren-Chaffin contract is one of the chief assets in the property division.

Sol worked before and during his marriage as a heavy equipment operator and in other strenuous occupations. During the last two years of the marriage, he did not work and was unemployed at the time of trial. For the entire length of the marriage Sol suffered from venous varicosities. He asserts he is unable to work because of this ailment. But there is evidence that his physical problem is subject to treatment, and the prognosis is excellent for a fairly rapid and complete recovery.

On April 12, 1971, the court entered a memorandum decision which divided the Moores' property fairly evenly between the parties as follows:

(1) The following property was to be set aside as the sole and absolute property of Sol:

| | |
|---|---|
| Lots 5, 6, 7, 8, 9, 10 Block 1 Smith Ranch Sub. Fairbanks Recording District together with improvements and contents thereof | $44,607.00 ($57,100.00 less amount owing on residence $12,493.00). |
| Mining Claim at Circle | $ 1,500.00 |
| RD–6 Cat Tractor | $ 750.00 |
| Massey-Ferguson Backhoe | $ 8,000.00 |
| Cement Mixer | $ 300.00 |
| 1½ ton Van Truck | $ 500.00 |
| 1968 Chevrolet Pickup | $ 1,725.00 |
| Shop Equipment | $ 1,000.00 |
| Owing from Russ Fuller | $ 333.00 |
| Amount paid by Alaska Overland | $ 1,200.00 |
| Interest and Time CD Accounts | $ 5,125.00 |
| Checking account | $ 900.00 |
| IRS Refund | $ 411.00 |
| Portion of the balance owing on the Lundgren-Chaffin contract | $13,188.00 |
| TOTAL | $79,539.00 |

(2) The following property was set aside as the sole and exclusive property of Lena:

| | |
|---|---|
| Corporate stocks and securities | $ 4,500.00 |
| Acreage and trailer house located in the State of Washington | $23,000.00 |
| 1966 Chevrolet Pickup | $ 1,275.00 |
| 1970 Buick Sedan | $ 6,300.00 |
| Interest and Time CD Accounts and Bonds previously taken by Lena Eliza Moore | $13,640.00 |
| Portion of the Lundgren-Chaffin contract | $22,000.00 |
| TOTAL | $70,715.00 |

Lena was additionally awarded her costs and a $600 attorney's fee. On October 19, 1971, the decree was amended to charge the $23,368.50 Sol received under the Lundgren-Chaffin contract during the year after Lena left home on April of 1970 to his portion of the property division. This addition increased Sol's share of the marital property to $102,907.50; Lena's share remained at $70,715.00, plus costs and the $600 attorney's fee.

There are essentially four issues presented in these appeals:

(1) Sol contends that the trial court failed to make the necessary findings of fact at the conclusion of trial; (2) both parties protest the property division as unfair; (3) Sol claims that the trial court erred in application of AS 09.55.210(6) by invading his premarital, separate property; and (4) Lena contends that the court abused its discretion by awarding her inadequate attorney's fees.

II

We will first deal with the claim that the findings of the trial court were inadequate.

The memorandum decision of April 12, 1971, stated that Sol's attorney would prepare the findings of fact and conclusions of law. Sol's attorney did not submit the requested findings and Lena's attorney was asked to fulfill the task. However, what was published on May 19, 1971, as the findings and conclusions was only a duplication of the property division decree. Amended

findings and conclusions were entered along with the October 19, 1971, amended decree, but again they merely duplicated the decree without presenting any written underlying findings of fact or conclusions of law.

■ The trial judge, however, reiterated several times during the trial his intention of basing the property division on the factors listed by this court in Merrill v. Merrill, 368 P.2d 546, 547–548 n. 4 (Alaska 1962). At the close of trial, the court went through most of the relevant factors established by this court in *Merrill* and made determinations according to the evidence of the case before him. Although it would have been preferable if the trial court had prepared separate written findings of fact and conclusions of law, the court's oral findings at the end of trial are

"sufficiently detailed and explicit findings 'to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'" [2]

We will not, therefore, reverse and remand on this aspect of the case.

### III

Both parties complain that the property division was unfair. Sol contends that the evidence before the court was such that he should have gotten a greater proportion of the property than Lena. He states that the court merely divided the property in half. On the other hand Lena protests that while the evidence supported an equal division, the court gave $32,192.50 more to Sol.

Sol does not feel that he should have been charged for property division purposes with the $23,368.50 he received under the Lundgren-Chaffin contract during the year after Lena left him. He asserts that

Lena's sudden departure forced him to support two households. Secondly, he contends the court did not give serious consideration to his poor health. Third, he states that he should have received a greater share of the proceeds from the Lundgren-Chaffin contract. Lastly, he asks for an award of costs as the prevailing party.

It is true that the property division was not equal. Sol received $32,192.50 more than Lena. The principal reason for the disparity is the court's failure to equalize the amounts of marital property the two parties expended during the separation period. In the initial property division decree Sol was awarded $79,539.00 and Lena $70,715.00. Lena was charged at that time with the $13,000.00 she expended during the separation but Sol was not charged with his expenditure of $23,368.50 of the marital funds. Later when Lena protested the exclusion of this amount, it was charged to Sol's share of the property division, increasing his share of the marital property to $102,907.50.

Several factors are indicated in the court's findings which may have led to the decision to award a larger sum to Sol than to Lena. First, the court had stated that in fixing the property division it would give special consideration to Lena's sudden withdrawal of a large sum from the marital property as it adversely affected the couple's financial circumstances.[3] Second, the court was attempting to split the marital property so as to give Sol the Fairbanks property and Lena cash and the Washington property.

Finally, Sol's contention that the trial court did not consider his health problems is simply not borne out by the record. His contention that he should have been awarded costs as the prevailing party is lacking in merit. The court specifically found that there was no prevailing party in this case.

2. Merrill v. Merrill, 368 P.2d 546, 548 (Alaska 1962) (footnote omitted).

3. At oral argument Sol's counsel contended that the court had not adequately considered Lena's "fault" in appropriating the $13,000, but it appears to us that the court, engaged in a difficult balancing problem, did indeed consider it, along with many other factors.

 The court's property division does not seem clearly unjust and will not be disturbed.[4]

## IV

Sol protests that he acquired lots 5, 6, 7, 8, 9 and 10 of the Smith Ranch Division and the business which was the subject of the Lundgren-Chaffin contract prior to his marriage with Lena. Therefore, he claims that under AS 09.55.210(6) [5] this property should not have been subject to the property division since it was not acquired during coverture.

 In Vanover v. Vanover, 496 P.2d 644 (Alaska 1972), and Ross v. Ross, 496 P.2d 662 (Alaska 1972), this court held that the trial court's discretion to invade property of a spouse acquired prior to coverture would not be disturbed absent "a clear abuse of discretion." Under this standard of review the trial court's action in this case regarding the lots and the Lundgren-Chaffin contract should not be disturbed.

It is clear that Lena's hard work for the automobile rental agency, the subject of the Lundgren-Chaffin contract, was of direct benefit to her husband's premarital property.

As for the Smith Ranch Division lots: lot 5 was acquired after the marriage; possibly three of the remaining lots were acquired a year before the marriage when the couple were pooling their resources, although Lena's contribution was admittedly small at this time; Lena helped build the family home on lot 6; and lot 7 was improved with an apartment building after the marriage. Of course, Lena indirectly benefited all of the properties by contributing her salary to the family expenses and thus helping Sol to hold on to his property while it appreciated in value. Further, Sol conveyed lots 6, 7, 8, 9 and 10 to a third party who reconveyed the property to Sol and Lena as tenants by the entirety in August of 1961.

In this respect the judgment is affirmed.

## V

 Lena contends that the $600 award of attorney's fees, as part of the property settlement, was so inadequate that it constitutes an abuse of discretion by the court. We find no merit in the argument presented.

Affirmed.

---

4. Ross v. Ross, 496 P.2d 662 (Alaska 1972) ; Vanover v. Vanover, 496 P.2d 644 (Alaska 1972), and cases cited therein.

5. "In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide

"(6) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and with-

out regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of his or her real or personal property to the other party . . . . "