William MULLALY, Appellant,

v.

Clare T. MULLALY, Appellee.

No. 1868.

Supreme Court of Alaska.

Feb. 25, 1974.

William H. Jacobs, Anchorage, for appellant.

William H. Fuld and Wendell P. Kay of Kay, Miller, Libbey, Kelly, Christie & Fuld, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

CONNOR, Justice.

The principal question on appeal is the trial court's division of property in conjunction with a decree of divorce.

Appellant William Mullaly and appellee Clare Mullaly had been married for twenty-five years. The two daughters born of the marriage had reached majority and were otherwise emancipated at the time of the divorce and subsequent property division. The Mullalys were married in Roxbury, New York, in 1946. Shortly thereafter, they moved to Alaska, where William was employed with the Federal Aviation Administration, and Clare was engaged in a variety of responsible occupations. In 1964 Clare left Alaska to return to New York State, for what appears to have been a permanent and mutually agreed upon separation. The children were with her, and William sent monthly payments, ranging from $220 to $300, primarily for their support.

In 1967 the Mullalys jointly acquired a parcel of land consisting of an inn and cottage on 21.1 acres of land situated in the

Catskill Mountains in New York.[1] After the purchase, William's monthly support payments ceased. William met one-half the down payment and the closing costs of the venture; Clare met the other half of the down payment. Since the purchase, Mr. Mullaly has made monthly payments on the first and second mortgages and has paid monthly bills for gasoline and oil expenses for a vehicle used in conjunction with the business.[2] Clare has contributed improvement and upkeep costs, car payments, and acquired the inventory for a combination gift and antique shop operated on the premises.[3] She also contributed her time and efforts to the enterprise, acting as proprietress of the inn which rented rooms to overnight guests and as operator of the shop. A third person, Vittorio Azamanti, assisted in the day-to-day operation of the business and may also have contributed monies to the venture.

No formal partnership articles were ever prepared. Mr. Mullaly received portions of federal and state income tax refunds on joint returns filed by the couple, but never received any funds from the earnings of the business. Although no formal salaries were paid, it was evident that Clare and Azamanti were able to support themselves from the proceeds of the venture.

Concurrently with filing for divorce,[4] William sent a letter to Clare asking her cooperation in the divorce and suggesting a possible property disposition, indicating some type of three-way interest in the property.[5] When asked about this letter at the property division hearing, Mr. Mullaly testified that he acknowledged a three-way interest in the property, that he was speaking not in terms of ownership but rather for the purposes of an eventual disposition of the property, not particularly on a one-third basis but whatever would be satisfactory. Later, he said that he was indeed considering a one-third disposition at or about the time he wrote the letter.

The trial court, acknowledging consideration of the letter and the testimony concerning it, awarded the acreage, buildings, inventory and furnishings to Mrs. Mullaly. William was awarded one-third the net value of the property excluding the business,[6] and was relieved of the mort-

---

1. The lower court found the intent of the venture was to provide a place where Clare could reside and find a means to support herself, a business venture in which one or both of the daughters might in time acquire an interest, and an investment for William, although the time and terms of the return on investment were not specified.

2. The mortgage payments totaled $335 per month; as of December 31, 1971, the remaining balance of the first mortgage was $10,355.47 and of the second, $1,357.34. The automobile expenses ranged from $80 to $100 per month. At the time of trial, Mr. Mullaly determined that he had spent $24,581.78 in payments related to the property since the purchase.

3. Monthly payments for aluminum siding and windows were $113.50; the balance remaining as of December 31, 1971, was $3,188.24. The 1971 shop inventory had a cost of $11,025.50.

4. A partial decree of divorce was granted to William on the grounds of incompatibility of temperament on December 10, 1971. This partial decree was not in any way to affect the rights of either party regarding the property division.

5. The pertinent part of the letter is as follows:

"You and Vittorio have worked hard to establish the business. I consider it a three-way partnership. However, I have had little influence in the business. Any ideas I expressed for selling part of the property to pay off the mortgages and ease my financial burden have been brushed aside on the basis a future profit was more important. And, whenever I visited and got involved in any business discussions, it seemed you and Vittorio always argued and I had little to say. So I have decided I am no longer interested in the business and want out. . . . One third of the present value of the property, in cash or acreage, would appear to be a reasonable settlement."

6. There was difficulty in obtaining an appraisal of the business, and Mrs. Mullaly was charged with the failure to obtain satisfactory evidence on this point. The lower court made no finding as to the fair market value of the business. The evidence adduced as to the earnings of the business was conflicting but indicated that the earnings were probably less than Mr. Mullaly's salary. In view of

gage and car payments. Repayment of the amount by Clare to William was ordered to begin in five years, with monthly installments of $300 plus interest (to commence one year after the date of the ordered settlement). In order to secure William's interest, Clare was ordered to prepare a Deed of Trust in favor of Mr. Mullaly.[7]

Mr. Mullaly appeals this award as unjust, unfair and inequitable and thus an abuse of discretion on the part of the trial court.

The basic statute covering property division upon dissolution of marriage in Alaska is AS 09.55.210(6) (as amended 1968):

"In a judgment in an action for divorce . . . or at any time after judgment, the court may provide (6) for the division between the parties of their property, whether joint or separate, acquired only during coverture, *in the manner as may be just,* and without regard to which of the parties is in fault . . . and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of his or her real or personal property to the other party. . . ." (emphasis added)

■ The judicial division of property will not be disturbed upon review unless the aggrieved party can show that it is "clearly unjust." Moore v. Moore, 499 P.

2d 300, 304 (Alaska 1972); Vanover v. Vanover, 496 P.2d 644, 645 (Alaska 1972); McSmith v. McSmith, 387 P.2d 454, 455 (Alaska 1963). The standard used by this court in assessing the fairness of a property division is set forth in Merrill v. Merrill (# 1), 368 P.2d 546, 547–548, n. 4 (Alaska 1962):

"It has been held that the principal factors to be considered by the trial court in determining the question of alimony or division of property as between the parties are the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any." (citations omitted)

This standard has continuing validity. Moore v. Moore, *supra,* 499 P.2d at 303; Vanover v. Vanover, *supra,* 496 P.2d at 645; Stroecker v. Stroecker, 428 P.2d 384, 386 (Alaska 1967); Groff v. Groff, 408 P.2d 998, 1001 (Alaska 1965).[8]

■ The entire record should be examined in order to obtain an understanding of the basis for the trial court's decision. Merrill v. Merrill (# 2), 388 P.2d 259, 260 (Alaska 1964); Harding v. Harding, 377

this relatively small income of the business, indicated by various tax records of William and answers provided by Clare, the fact that the business is now paying its own way, and that it is essentially the product of Clare's and Vittorio's efforts, we will not remand for a finding on this point.

7. The Deed of Trust was to specifically give William the right of strict foreclosure in the event of any default. Additionally, it was to reserve the right to Mr. Mullaly to correct any default in mortgage obligations, which amount would be added to the award.

8. As a standard for assessing the fairness of a property division, appellant suggests, "The ultimate question in measuring the fairness of a property division is: What did each party contribute to the family assets? What did each party receive from the assets during the

marriage?" The words of AS 09.55.210(6) (as amended 1968), however, specifically contradict this type of "return on investment" standard. The court is to divide the property "whether joint or separate" between the parties, and may require either of the parties to "assign, deliver, or convey *any of his or her* real or personal property" to the other. (emphasis added) This court has clearly rejected a straight return on investment standard. In Merrill v. Merrill (# 2), 388 P.2d 259, 260 (Alaska 1964), the court found that it was not na injustice to disallow credit for the earning power of a premarital investment, since the trial court was authorized by statute to divide all of the property, regardless of ownership.

See Vanover v. Vanover, 496 P.2d 644 (Alaska 1972), which interprets the amended statute.

P.2d 378, 380 (Alaska 1962). There is ample evidence in the record of the instant proceeding indicating that the lower court consicentiously considered and applied the *Merrill* (# 1) factors in reaching the property disposition.

■ William Mullaly is relieved of approximately $435 in monthly expenses, and he has a fully secured interest in the property to which he contributed, along with the prospect of substantial monthly additions to his income in the future. Clare is now in possession of the business which has been built up primarily through her and Vittorio's time and efforts, accompanied by the necessary lands and buildings through which she can conduct that business. We hold that the property division is not clearly unjust.

The judicial division of property upon dissolution of marriage

". . . is a matter left by statute to the broad discretion of the trial court and will not be disturbed upon appeal unless an abuse of such discretion is shown. To establish an abuse of discretion the aggrieved party must show that the property division was clearly unjust." Crume v. Crume 378 P.2d 183, 186 (Alaska 1963). (footnotes omitted)

The trial court adhered to standards set forth by this court in *Merrill* (# 1), *supra,* in arriving at a disposition of the property; a disposition which is not clearly unjust. As the division has met the proper criteria, there was no abuse of discretion.

Affirmed.