Henry Clinton **ALLEN**, Jr., Appellant,

v.

Margaret E. **ALLEN**, Appellee.

No. 2453.

Supreme Court of Alaska.

Aug. 12, 1976.

H. John DeNault, III, Fairbanks, for appellant.

Dallas L. Phillips, Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CON-NOR, ERWIN, BOOCHEVER and BURKE, JJ.

## OPINION

BURKE, Justice.

This is an appeal from the judgment of the superior court in an action for divorce. Appellant Henry Allen contends that the court's division of the parties' property was clearly unjust.

Henry Allen and Margaret Allen were married for eight years. At the time of their divorce, Mr. Allen was 38 years of age and Mrs. Allen was 42. There were no children born of the marriage, but Mrs. Allen's daughter by a previous marriage lived with the parties.

Both Mr. and Mrs. Allen were in good health [1] and worked throughout the marriage. The record indicates that Mrs. Allen's income went primarily to meet joint expenses and investments, while Mr. Allen's income was devoted largely to the purchase of electronic equipment and for travel expenses which were of no direct benefit to Mrs. Allen.[2]

The judgment awarded to Mrs. Allen:

1. One-half of the paid-in equity in two lots and the family home situated thereon worth $14,108.75.

2. A life estate in the real property, terminable upon her remarriage or at such time as she ceases to use the family home as her residence.

3. Household furnishings and effects, worth $2,682.00.

4. Her personal belongings and jewelry.

5. A cash settlement of $5,000.00, payable in monthly installments of $175.00 per month.

Mr. Allen was awarded:

1. One-half of the paid-in equity in the family home and lots valued at $14,108.75.

2. Electronic equipment and a van valued at $10,000.00.

3. One 1973 Cadillac automobile, valued at $4,600.00 with an owned equity of $826.-85.

4. His personal belongings and household furniture worth $2,447.00.

At the time of the divorce, Mrs. Allen was employed as manager of Avis Rent-A-Car in Fairbanks, Alaska, earning a salary of $1,200.00 per month. Her net monthly income, from her work, was $904.00. Her salary was expected to increase to $1,300.-00 per month by January 1, 1975. In addition to her salary, Mrs. Allen receives $62.50 per month, from her former spouse, for the support of her teenage daughter.

Mr. Allen was employed as an operation's controller by Bendix Field Engineering Corporation, receiving a net monthly salary of $1,600.00 to $1,700.00. He is required to pay $250.00 per month for the support of his minor children by a previous marriage. In addition to his salary, Mr. Allen enjoys substantial fringe benefits as a result of his membership in the Teamster's Union.

During their marriage the parties accumulated various debts and obligations. Under the terms of the judgment Mrs. Allen was made responsible for payment of the following:

1. Nerland's Home Furnishings—$936.-70, payable in monthly installments of $50.00.

2. Sears, Roebuck & Co.—$864.09, payable in monthly installments of $81.25.

3. Fairbanks Memorial Hospital—$51.-25.

---

1. Although in 1970 Mrs. Allen had a total hip replacement, the operation was a success.

2. With Mrs. Allen's help, Mr. Allen spent approximately $34,000 on electronic equipment and about $8,000 in cash and time contributions to political organizations. He made a number of trips, at his own expense, on political business. Furthermore, Mrs. Allen contributed various cash settlements that she received for personal injuries that she had suffered to the family account, while Mr. Allen withheld, for his own use, a substantial amount that he received as severance pay from an employer.

4. Dr. Doolittle—$116.50.

5. Tanana Valley Clinic—$95.00.

6. Dr. Johnson—$100.00.

Mrs. Allen was also required to pay her own fuel oil bills, electricity, and other utility charges on the residence, totalling approximately $190.00 per month.

According to the judgment, Mr. Allen was made responsible for payment of the following:

1. Bank Americard account-payable in monthly installments of $35.00.

2. Publishing Co.—$71.20.

3. Balance owed on 1973 Cadillac—payable in monthly installments of $174.05.

4. Mortgage payment on house and lots—$571.00 per month.

Mr. Allen was also made responsible for major repairs to the family home, with a proviso that no major repairs or capital improvements be made without his prior approval.

■ The legislature has given the superior court broad discretion in dividing the property of the parties to a divorce action.[3] As recently noted in *Courtney v. Courtney*, 542 P.2d 164, 169 (Alaska 1975):

> We have repeatedly stated that a judicial division of property is left by the statute to the broad discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. The aggrieved party must show that the property division is clearly unjust. (footnote omitted)

■ Appellant first argues that the superior court, by its decree, created a "hybrid" tenancy in common and landlord-tenant relationship that may lead to continuing conflict between the parties and additional litigation. Because of this possibility of future dispute, he contends that the judgment is clearly unjust. We find such argument to be without merit. The mere possibility of such difficulty is not sufficient reason for us to disturb the superior court's exercise of its discretion.

■ Appellant next argues that by awarding appellee a life estate in the real property, and requiring appellant to pay the mortgage payments, the court, in essence, awarded alimony to Mrs. Allen, and that such an award was clearly unjust in light of the evidence. Again we find appellant's argument to be without merit. First, we view that portion of the decree as part and parcel of the court's effort to make a reasonable division of the parties' property and the responsibility for the various obligations that they had acquired, and not alimony. Second, considering Mrs. Allen's need for a home for herself and her daughter, and the fact that Mr. Allen will receive the benefit of any future appreciation and growth of his equity in the property, we fail to discern the basis for appellant's claim that the result was clearly unjust.

■ Appellant next argues that the judgment has imposed an impossible financial burden on him. Of course, all divisions of property are likely to result in some financial burden. Our task is to determine whether in this case the judge abused his discretion by imposing a financial burden which is "clearly unjust." *Courtney v. Courtney, supra.* Appellant must demonstrate such injustice to cause us to reverse a decision by the trial court. Mr. Allen is certainly in a position to alleviate his monthly payments by refinancing or liquidating assets, such as the van and electronic equipment, or by trading down to a less expensive vehicle than his Cadillac. It is not unreasonable to expect a party to a divorce to have to re-

3. AS 09.55.210(6) states that the court has power to provide:
for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities between the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of his or her real or personal property to the other party;

organize financially, at least on a short term basis. While the result in this case may be harsh, as between the parties we cannot say that it is clearly unjust.

One of the factors cited by the trial judge in support of his division of the parties' property was the consideration that appellant "should have the benefit of any appreciation in the [real] property." Mr. Allen argues that the superior court, by so doing, engaged in mere speculation, because there was no evidence relating to any future appreciation in the value or equity of that asset. It would seem logical to assume that as Mr. Allen continues to make payments on the property, his equity will increase. Equally obvious is the fact that *if* the property appreciates in value, Mr. Allen will and should benefit by such increase since he is required to make the future mortgage payments. It does not appear that the superior court necessarily assumed that there would be future appreciation, only that Mr. Allen should enjoy the benefit of any increase in value that might occur. Thus, we see no merit in appellant's argument.

█ Finally, appellant argues that the superior court erred in not simply ordering a sale of the real property, and an equal division of the proceeds, thereby relieving each of the parties of a serious financial hardship. While a sale might have certain advantages, we cannot say that they are so substantial as to make the alternative plan selected by the trial court clearly unjust.[4]

In light of the broad discretion vested in the trial court, and our standard of review in such matters, we have no alternative but to affirm the judgment of the court below.

AFFIRMED.

CONNOR, J., dissented.

CONNOR, Justice (dissenting).

I must respectfully dissent.

My main concern is with that portion of the decree which gives to Mrs. Allen a life estate in the residential property, as long as she lives in the home and does not remarry, and which places upon Mr. Allen the obligation of making monthly mortgage and assessment payments of $571, as well as bearing the cost of any "major repairs". Mr. Allen receives in return any appreciated value increase over the current equity in the house and lots in the event that someday the property is sold.

Mr. Allen contends that these expenses are unfairly placed upon him, and that any reliance upon appreciated future value as a return is purely speculative. He also contends that he will have little money left each month for his own living expenses.

The trial court explained that "a lot of things" led it to its decision concerning the house, and specifically mentioned three considerations.

First, the court felt that Mr. Allen had a moral obligation, though not a legal one, to contribute to the support of Lizabeth, Mrs. Allen's daughter by her prior marriage. The court held:

"Mr. Allen when he undertook the marriage although there's no evidence at least that he adopted her child, he certainly assumed some obligation whether legal or otherwise to provide a home for her because the child came with the wife."

There is a legal duty in Alaska of a parent to support his child. AS 25.20.030. There is no legal duty, however, for such third persons as the second husband of the child's mother to provide support. Indeed,

"[n]either spouse is liable for the debts or liabilities of the other incurred before marriage, and, except as otherwise provided, neither is liable for the separate debts of the other. . . ." AS 25.-15.050.

---

4. In deciding not to order a sale of the family home, the trial judge considered, among other things, the difficulty that Mrs. Allen might have in securing replacement housing, stating: [A]nother reason why I didn't want the house sold [is] because even with fourteen thousand dollars, it's doubtful she's going to get a home of her own on the present market.

In our view, the availability of such housing was a factor properly considered by the trial judge.

"When property is owned by one spouse the other has no interest which makes the property liable for the contracts or liabilities of the spouse who is not the owner of the property, except as provided in this chapter." AS 25.15.010.

Thus, the expressed legislative policy is not to impose such a duty. Further, as a matter of general legal principle there should be no duty on Mr. Allen after he and Mrs. Allen have gone their separate ways. There is no need for such a duty; Lizabeth has substantial rights under AS 25.20.-030 against Mrs. Allen and her father. Had Lizabeth been adopted by Mr. Allen, the results would be different. In my view this is an insufficient basis on which to require Mr. Allen to contribute to the support of Lizabeth.

Second, the court gave any future appreciation of the value of the house to Mr. Allen. In light of Mrs. Allen's life tenancy, this has little current value. While the lot adjacent to the house might have been undervalued by the court, and general property values may well rise, it does not seem fair to tie up Mr. Allen's resources in an involuntary long-term investment which cannot practically be liquidated except at the whim or upon the death of Mrs. Allen.

Third, the court resorted to various unnamed considerations, mentioning only one: that Mrs. Allen will forego any benefits under Mr. Allen's Teamsters' retirement plan. This appears to be highly speculative, and insubstantial.

My review of the record reveals that the relative amount of monthly living money awarded each party are grossly disproportionate, even when calculated so as to resolve doubts in favor of Mrs. Allen. Under the decree Mr. Allen is left with an amount on which to maintain himself which is computed as follows:

| | | | |
|---|---|---|---|
| Monthly Take-Home pay | | | $1700.00 [1] |
| DEBTS | Initial | Monthly | |
| Bank Americard | $ 35.00 | $ 35.00 | |
| Child Support | 250.00 | 250.00 | |
| Publishing Co. | 71.20 | | |
| House Payment [2] | 571.00 | 571.00 | |
| Superior Court Total | $ 927.20 | $ 856.00 | |
| ADD: Car payments [3] | 164.05 | 164.05 | |
| Margaret Allen ($5,000) | 175.00 | 175.00 | |
| | $1266.25 | $1195.05 | $1195.05 |
| Monthly Net After Payments | | | $ 504.95 |

Additional Debts:
| | |
|---|---|
| Alaska National Bank (Master Charge) | $ 660.00 |
| Margaret Allen's Attorney Fees | 700.00 |
| "Major repairs to family home" (unknown) | |

————◆————

In calculating Mrs. Allen's monthly living money, it must be kept in mind that she will be receiving shelter rent-free under the court's decree. Therefore, some

1. $800 to $850 bi-monthly. I use the larger figure for approximation purposes.

2. Includes mortgage, sewer and water assessments on house lot and adjacent lot. Assessments amount to $3,893.03 annually, or $324.-42 monthly, leaving $246.58 monthly towards the mortgage.

3. The amount shown was stipulated. The decree erroneously lists as $174.04. Judge Van-Hoomissen may have inadvertently used the figure because of the confusion over the exact amount of the payments.

figure must be included to reflect that she will not pay rent out of her monthly living money, while her former husband must do so. Out of the many possible figures, I have chosen simply the amount of the mortgage-and-assessment payments. This amount may well be lower than an actual rent figure, although perhaps Mrs. Allen could obtain an adequate apartment for a lower amount. Under my reading of the record, Mrs. Allen is left with the following amount on which to maintain herself:

| | | Initial | Monthly | |
|---|---|---|---|---|
| Monthly Take-Home Salary ($452 bi-monthly) | | | | $ 904.00 |
| Child Support (first marriage) | | | | 62.50 |
| Rent not paid [4] | | | | 571.00 |
| Effective Monthly Take-Home Income | | | | $1537.50 |
| DEBTS | | | | |
| Oil (House) [5] | | $120.00 | $120.00 | |
| MUS (House) [6] | | 35.00 | 35.00 | |
| GVEA | | 35.00 | 35.00 | |
| Nerlands ($936.70) | | 50.00 | 50.00 | |
| Sears ($864.09) | | 81.25 | 81.25 | |
| Fairbanks Hospital | | 51.20 | | |
| Dr. Doolittle | | 116.50 | | |
| Dr. Johnson | | 100.00 | | |
| Tanana Valley Clinic | | 95.00 | | |
| | | $683.95 | $321.25 [7] | 321.25 |
| Monthly Net After Payments | | | | $1216.25 |

Mrs. Allen, then, receives a minimum of two and one-half times the monthly living money left to Mr. Allen ($1216.25 as compared with $504.95). If Mr. Allen's additional fixed debts are considered, she receives relatively more. Considering the general cost of living price levels in the Fairbanks, Alaska, area where the parties reside, it is my opinion that the trial court's award amounts to an abuse of discretion. No alimony was awarded to Mrs. Allen, as she holds employment. And, as noted above, an award for child support in this case would be improper.

I would hold the superior court's award to be "clearly unjust",[8] and remand the

4. Using value of house payments only. The figure might possibly be higher, but for approximation purposes I have chosen the lower figure. The $175 monthly payments by Mr. Allen are not included as income, since they are intended as part of an outright property settlement, even though they are included in Mr. Allen's debts, because as a practical matter that money will not be his to spend on living costs.

5. I include house expenses, even though Mr. Allen's house (or apartment) expenses are not included. The reason is that, again I am giving Mrs. Allen the benefit of the doubt in these listings.

6. Municipal Utilities System.

7. The superior court lists this as $421.25. As the debt to Dr. Johnson does not appear to be a monthly expense and the court's and my figures agree as to initial expenses, I conclude that the court's figure was arrived at through an error in addition.

8. A showing that a property division is "clearly unjust" is sufficient to demonstrate an abuse of discretion. *See Mullaly v. Mullaly*, 518 P.2d 1395, 1398 (Alaska 1974); *Moore v. Moore*, 499 P.2d 300, 304 (Alaska 1972); *Ross v. Ross*, 496 P.2d 662, 663 (Alaska 1972); *Vanover v. Vanover*, 496 P.2d 644, 645 (Alaska 1972); *Sheridan v. Sheridan*, 466 P.2d 821, 822 (Alaska 1970); *Houger v. Houger*, 449 P.2d 766, 771 (Alaska 1969); *Stroecker v. Stroecker*, 428 P.2d 384, 386 (Alaska 1967); *Groff v. Groff*, 408 P.2d 998, 1000, 1001 (Alaska 1965); *McSmith v. McSmith*, 387 P.2d 454, 455 (Alaska 1963); *Crume v. Crume*, 378 P.2d 183, 186

case for further consideration as to the disposal of the family real estate.

An order that the property be sold within a reasonable time, and the proceeds divided, would go far towards satisfying the trial court's concern about Lizabeth's future by providing Mrs. Allen with funds from which she could satisfy her legal duty to supply a home for her child. It would improve Mr. Allen's cash position, remove the possible friction of relying on Mr. Allen to effect "major repairs", and more effectively terminate a relationship which could not longer endure. Since, however, this would result in both a reduction of Mrs. Allen's effective income by $571.00, and a reduction of Mr. Allen's monthly debt payments by a similar amount, some redistribution of debt payments in favor of Mrs. Allen would also be in order, so as to better balance the financial obligations of the parties.[9] In view of the majority's disposition of this case such a redistribution is only of academic interest.

For the reasons given, I would reverse and remand for a new determination by the superior court.

(Alaska 1963); *Rhodes v. Rhodes*, 370 P.2d 902, 905 (Alaska 1962); *Merrill v. Merrill*, 368 P.2d 546, 547 (Alaska 1962).

9. I do not mean to imply that the situation of the parties financially need be equalized, but merely that the disparity between them under the decree entered is too great.